Alton A. JONES, Jr., Appellant,

v.

Luther D. ROBINSON, M.D.

No. 24010.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1970.

Decided Feb. 4, 1971.

Mr. Charles R. Halpern, Washington, D. C., with whom Messrs. Stephen B. Rosenberg and David J. Newburger, Washington, D. C., were on the brief, for appellant.

Mr. Brian W. Shaughnessy, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT and ROBINSON, Circuit Judges, and GORDON,* United States District Judge for the Eastern District of Wisconsin.

PER CURIAM:

This appeal presents a narrow question: what type of fact finding procedure is required before St. Elizabeths Hospital can transfer a patient accused of crime to the maximum security section of the hospital. Using Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970), as our guide, we hold that the patient must be afforded elemental due process "tailored to the capacities and circumstances of those who are to be heard." *Id.* at 268–269, 90 S. Ct. at 1021.

Appellant began his stay at St. Elizabeths Hospital in 1963 after having been found not guilty by reason of insanity. He was placed in the hospital's John Howard Pavilion, which is the maximum security section primarily for the criminally insane, where he remained until 1966. On December 20, 1966, he was transferred to Cruvant Service, a medium security facility, where his privileges were significantly increased. In May 1967 he was transferred back to John Howard when he was accused of rape by his girl friend who was also a patient of the institution. The hospital conducted an investigation of the incident which consisted of one doctor interviewing appellant and another doctor interviewing the alleged victim. The doctor who interviewed the victim concluded that appellant was guilty and recommended that appellant be transferred to John Howard; the superintendent of the hospital approved that recommendation. The primary records of the hospital indicating the basis on which the authorities made their judgment that appellant had committed the rape consist of two written reports, signed by the doctors, of the interviews with appellant and his girl friend.

The present action began with a *habeas corpus* petition filed in the District Court on September 22, 1969, requesting a broad spectrum of relief —from adequate treatment to release from the hospital—and including, if retained at the hospital, a transfer out of John Howard. The petition was denied. Since this action by the District Court, appellant has been granted conditional release from the hospital, and now all parties concede that the only issue left in the case is whether the hospital used procedures acceptable under Goldberg v. Kelly, *supra,* and Williams v. Robinson, 139 U.S.App.D.C. 204, 432 F. 2d 637 (1970), in determining that appellant had raped his girl friend and fellow patient in 1967. We hold that the procedures used by the hospital were lacking in elemental due process, and that appropriate procedures should now be undertaken to determine whether the records of the hospital as they relate to the incident in suit should be corrected.[1]

Some years ago this court decided that *habeas corpus* was the appropriate remedy for challenging hospital decisions concerning internal administration. Miller v. Overholser, 92 U.S. App.D.C. 110, 206 F.2d 415 (1953). We have recently had occasion to reaffirm that ruling specifically as it relates to the John Howard Pavilion. Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617 (1969). The governing standard of judicial review of such hospital decisions has also been determined by this court. The question is not whether the hospital has made the best decision, but only whether "it has made a permissible

---

\* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

1. The fact that appellant now is on conditional release from the hospital does not render this matter moot. *See* Hudson v. Hardy, 137 U.S.App.D.C. 366, 424 F. 2d 854 (1970) ; Matthews v. Hardy, 137 U.S.App.D.C. 39, 420 F.2d 607 (1969).

and reasonable decision in view of the relevant information and within a broad range of discretion." Tribby v. Cameron, 126 U.S.App.D.C. 327, 328, 379 F.2d 104, 105 (1967). The standard is necessarily a flexible one depending on the issue to be determined. The range of discretion permitted the hopsital, of course, would be far greater where the question to be determined is a medical one. By the same token, where the issue is whether the patient committed a crime, judicial review is obviously more intense, not only as to the factual issue determined, but also as to the procedures used in making that determination. Here appellant was in effect convicted of rape by the hospital authorities on the basis of an interview with appellant by one doctor and an interview with his girl friend by another. Interestingly, it was the doctor who interviewed the girl friend who apparently decided that appellant had committed the rape and recommended his transfer to the maximum security facility.

■ In affording due process to a patient charged with a crime, it is not suggested that the hospital conduct a full dress trial such as might be had in a court of law. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 266, 90 S.Ct. 1011. The purpose of the hospital authorities in making their judgment is a limited one related to appropriate treatment for the accused and appropriate protection for the other patients. Certainly proof of guilt beyond a reasonable doubt is not required. Nevertheless, because of the consequences of that decision to patients like appellant, some minimal degree of

due process is required in order to make as certain as the hospital authorities reasonably can the correctness of their decision.[2]

■ No reason appears why the hospital could not have assigned this investigation to one neutral person, either on the staff or from outside, who would interview all the witnesses, including appellant and witnesses suggested by him, give appellant the benefit of his investigation, permit appellant to respond to the evidence against him, make findings and give reasons for his decision. The court realizes that this investigation occurred in 1967, before the hospital authorities had the benefit of this court's opinion in Williams v. Robinson, *supra;* perhaps a similar situation today may be treated differently by reason of the teaching of *Williams.*[3] Nevertheless, we have decided that it would be in the interest of justice insofar as it relates to the patients in St. Elizabeths accused of crime to implement the teaching of *Williams* by staking out minimal protective procedures required by due process before the hospital can determine that a patient has committed a crime which would require his transfer to maximum security facilities.[4] We hold that minimal due process in such circumstances requires:

1. That the officer conducting the inquiry be neutral, in the sense that where possible he have no prior connection with the accused patient, his alleged victim, or the incident under investigation. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 271, 90 S.Ct. 1011. A doctor, an administrative

---

2. As indicated in Williams v. Robinson, 139 U.S.App.D.C. 204, 211, 432 F.2d 637, 644 (1970), on report of the crime and pending the investigation the hospital would be justified in transferring the accused to the maximum security of John Howard Pavilion.

3. *See also* Rouse v. Cameron, 125 U.S.App. D.C. 366, 371 n. 22, 373 F.2d 451, 456 n. 22 (1966); Bolton v. Harris, 130 U.S. App.D.C. 1, 11 n. 58, 395 F.2d 642, 652 n. 58 (1968); Covington v. Harris, 136 U.S.App.D.C. 35, 39–40, 419 F.2d 617,

621–622 (1969); Dixon v. Jacobs, 138 U.S.App.D.C. 319, 327–328, 427 F.2d 589, 597–598 (1970).

4. The procedures prescribed, or equivalent procedures, may also be required for determination of other disputed facts as well, when the hospital places substantial reliance on those facts in selecting a serious course of action concerning the patient, or when the presence of those facts on the patient's record may have serious collateral consequences.

assistant to the superintendent or similar personnel of the hospital could serve in this capacity.

2. That the investigating officer interview all the witnesses himself, including those suggested by the accused patient, and make a written memorandum of each interview. In this way the same fact finder can judge the credibility of all witnesses. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 269, 90 S.Ct. 1011.

3. That copies of these memoranda be made available to the accused patient and that he be given an opportunity to respond to the allegations contained therein. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 267–268, 90 S.Ct. 1011.

4. Where the hospital authorities believe that confrontation and cross-examination will not adversely affect the patients involved, including the witnesses, confrontation and cross-examination to the extent indicated should be permitted. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 270, 90 S.Ct. 1011.

5. That a lawyer to represent the accused patient is not required, but the hospital authorities may conclude that a lay representative assigned to the accused patient may be in the interest of justice. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 270, 90 S.Ct. 1011.

6. No court reporter or transcript of the proceedings would ordinarily be necessary, but detailed informal memoranda should be kept by the investigating officer who shall also make findings and give reasons for his decision. *Compare* Goldberg v. Kelly, *supra,* 397 U.S. at 271, 90 S.Ct. 1011. These memoranda, together with his findings and reasons, should become a part of the permanent records of the hospital. *Compare* Williams v. Robinson, *supra,* 139 U.S.App.D.C. at 209–210, 432 F.2d at 642–643.

7. That while the investigating officer may determine whether the evidence is sufficient to justify a trans-fer of the accused patient to John Howard, to be effective that judgment must be affirmed by the superintendent of the hospital after a review of the record.

While the above minimum standards of due process should be sufficient, if observed, to provide a rational basis for the action taken by the hospital authorities, as well as provide an adequate record for judicial review thereof, in appropriate cases it may be determined by the authorities that additional safeguards are needed. We realize that a hospital should not be unduly burdened with fact finding procedures. At the same time, if the right to judicial review of hospital action is to be recognized, some adequate basis for that review must be provided by the record made in such proceedings. *See* Williams v. Robinson, *supra,* 139 U.S. App.D.C. at 209–210, 432 F.2d at 642–643.

The judgment of the District Court is reversed. This case is remanded with instructions to order appellee to conduct proceedings consistent with this opinion to determine whether the records of the hospital as they relate to the incident in suit should be corrected. *See* Hudson v. Hardy, 137 U.S.App.D.C. 366, 424 F.2d 854 (1970).

So ordered.